**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION**

| | | |
|---|---|---|
| AJE-ORI AGBESE, | § | |
| MINHEE EOM, and | § | |
| WAN-LIN CHANG | § | |
| | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| UNIVERSITY OF TEXAS RIO GRANDE | § | |
| VALLEY | § | |
| | § | |
| *Defendant.* | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

NOW COME Aje-Ori Agbese, Minhee Eom, and Wan-Lin Chang, Plaintiffs in the above-styled and numbered cause, and file this Original Complaint against Defendant University of Texas Rio Grande Valley ("UTRGV"). Plaintiffs would respectfully show the Court the following:

**I. THE PARTIES**

1.1     Plaintiff Aje-Ori Agbese ("Dr. Agbese" or "Plaintiff Agbese") is an individual residing in Hidalgo County, Texas.

1.2     Plaintiff Minhee Eom ("Dr. Eom" or "Plaintiff Eom") is an individual residing in Hidalgo County, Texas.

1.3     Plaintiff Wan-Lin Chang ("Dr. Chang" or "Plaintiff Chang") is an individual residing in Hidalgo County, Texas.

1.4     Defendant University of Texas Rio Grande ("Defendant" or "UTRGV" or "the University") is an arm or instrumentality of the State of Texas, and is a public university organized under the laws of the State of Texas, with its main campus located in Edinburg, Texas. UTRGV

1

may be served by serving Guy Bailey, in his capacity as President of UTRGV, Office of the President, 1201 West University Drive, Edinburg, Texas 78539.

## II.  JURISDICTION AND VENUE

2.1     This Court has jurisdiction over this action under 28 U.S.C. § 1331 because one or more of Plaintiffs' causes of action is created by Federal law, specifically Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*

2.2     This Court has jurisdiction over Defendant UTRGV with respect to Plaintiffs' Title VII claims, because Congress abrogated Eleventh Amendment state sovereign immunity through "appropriate legislation" – the 1972 amendment to 42 U.S.C. § 2000e(a) – as permitted by Section 5 of the 14th Amendment. *Fitpatrick v. Bitzer*, 427 U.S. 445, 447-448, 456-457 (1976).

2.3     Venue is proper in this court pursuant to 28 U.S.C. § 1391(b), as all or part of Plaintiffs' claims accrued in Hildalgo County, Texas, which is within this district and division.

## III.  FACTUAL BACKGROUND

3.1     Plaintiffs Aje-Ori Agbese, Minhee Eom, and Wan-Lin Chang (collectively, "Plaintiffs") bring this action against Defendant UTRGV, a component university of the University of Texas System, for discriminatory conduct in violation of Title VII. Through its Provost and President, UTRGV discriminated against Plaintiffs against them on the basis of their non-Spanish-speaking, non-Hispanic national origins and ethnicities, for their African or Asian races and colors, pronounced accents, and female sex. Plaintiff Agbese, who is from Nigeria, Plaintiff Eom, who is from Korea, and Plaintiff Chang, who is from Taiwan, were each denied promotions – to Full Professor for Plaintiffs Agbese and Eom, and to tenured professor and Associate Professor for Plaintiff Chang.

3.2    Despite enthusiastic recommendations at all prior levels of review, Defendant UTRGV's Provost Zayas, who is a Spanish-speaking, Hispanic, Puerto Rican male, denied each Plaintiff's application, citing an alleged insufficiency in their research records. These denials, upheld or ignored by the University's President Bailey, who is male, were not based on merit, but rather on a discriminatory vision, contrary to Texas law, to transform Defendant UTRGV into a bilingual institution where faculty would teach courses or portions of courses in Spanish – a language none of the Plaintiffs speak.

3.3    This vision was expressed by Provost Zayas in a speech in February, 2024, at a dinner hosted by the UTRGV College of Engineering and Computer Science, and published in a February 23, 2024, article by the *Rio Grande Guardian*. The vision was for UTRGV to "become an authentically bilingual, bicultural and biliterate institution. Our students, faculty and staff can learn and teach in both Spanish and English."

3.4    UTRGV is well on its way towards implementing its discriminatory and illegal vision of offering classes taught entirely in Spanish – preferentially hiring faculty who speak Spanish, and denying advancement to faculty, including Plaintiffs, who cannot. A few weeks after UTRGV's denied Plaintiffs' applications for promotion, on June 28, 2024, Plaintiff Agbese's Department Chair, Jennifer Lemanski ("Chair Lemanski"), sent an email to all Department of Communication faculty, announcing that "*the Provost* will be authorizing us 2 tenure track lines" for the creation of an undergraduate program in Spanish Language Media/Journalism/Mass Comm. (emphasis added). "The main criteria for these two lines is that they must be focused on Spanish as the delivery language […]." Chair Lemanski further reported, "With the enthusiasm *coming from the Provost's office* on this issue," there might be funding available for space in

Brownsville, and she assured her department that this did not mean they could not get other lines, including one for which the department had actually prepared. (emphasis added).

3.5      Defendant UTRGV's adverse employment actions against Plaintiffs thus reflect a deliberate effort to exclude faculty who do not conform to Provost Zayas' linguistic and cultural preferences, denying promotion to Plaintiffs based on their national origins, ethnicities (including their accents), races, colors, and inability to speak Spanish, as well as their sex. Most of the faculty denied tenure/promotion at UTRGV during the 2023-2024 academic year were women, underscoring a stark gender disparity in opportunities for advancement at UTRGV. Provost Zayas' vision for faculty teaching classes in Spanish, coupled with the University's refusal to allow Plaintiffs any meaningful grievance process, reveals a systemic intent to marginalize and force out faculty, particularly female faculty, including Plaintiffs, who do not speak Spanish and come from non-Spanish-speaking countries, while prioritizing Spanish-speaking faculty hires.

### Plaintiff Aje-Ori Agbese

3.6      Plaintiff Aje-Ori Agebese was hired by Defendant UTRGV's legacy institution, University of Texas Pan American, in 2006, as an Assistant Professor of Communications in its College of Arts and Humanities[1]. Born and raised in Nigeria, Dr. Agbese, having come from a family of Nigerian mass media professionals, followed in her family's footsteps, focusing her research and scholarship in the field of Nigerian mass communication. Over the course of her 19 years at UT Pan Am/UTRGV, Dr. Agbese has published over 14 books, book chapters, and articles in scholarly journals, excelled annually in her teaching evaluations, mentored graduate students, taken key roles in collaborative grants, served on numerous shared governance committees, and in all other ways, she has done her part to promote a vibrant campus life for students.

---

[1] University of Texas Pan Am became UTRGV in 2015. The former College of Arts and Humanities is now named the College of Liberal Arts.

3.7    Plaintiff Agbese earned tenure and promotion to Associate Professor in 2012, and since then, received multiple awards for her teaching excellence, including a *2012 UT System Regents' Outstanding Teaching Award* and 2*014 College Excellence Award in Teaching*, and was recognized in 2013 as one of the *Top 25 Professors in Texas*. She earned numerous grants and fellowships, including a fellowship with the *Carnegie African Diaspora Fellowship Program*. A life-long learner, and despite already having a Ph.D., Dr. Agbese earned a Master's degree in Higher Education Administration in 2023, as one of UTRGV's inaugural students in that program. Dr. Agebese was featured in multiple articles by UTRGV's campus paper, *The Newsroom*, including in its March 2023 Women's History Month publication celebrating her success.

3.8    Plaintiff Agbese applied for promotion to Full Professor in September 2023. At all levels up to Provost Zayas, Dr. Agbese's colleagues and supervisors praised her teaching, research, and service, ultimately concluding she "Exceeds Expectations" in all areas, and enthusiastically recommended her for promotion to Full Professor.

3.9    Plaintiff Agbese's Department Committee praised her "fine record as a teacher," and noted her reputation as an "an expert in the plights of African women." Due to technical issues that arose during the dossier submission process, the Department Committee permitted Dr. Agbese to resubmit her dossier to showcase her full record of research and service. Upon resubmission, the Department Committee voted 5-0 (with 1 abstention) to recommend Plaintiff Agbese for Full Professor, concluding "During the period under review, Dr. Agbese has clearly exceeded expectations in teaching, research, and service." Her Department Chair, Jennifer Lemanski ("Chair Lemanski"), concurred with the Department Committee, also rating her application as "Exceeds Expectations" in teaching, research, and service, and noting comments from external reviewers of her "outstanding research productivity."

5

3.10    At the next level of Plaintiff Agbese's review for promotion to Full Professor, the College Committee similarly acknowledged that she "shines" as a teacher, and that her research record since tenure was "strong," and "her record demonstrates that she is well above the minimum quantity of publications necessary." The College Committee voted 6-0 (with 1 abstention) to recommend Plaintiff Agbese to Full Professor. As with the Department Committee and her Department Chair, the College Committee rated Dr. Agbese as having exceeded expectations across all categories; teaching, research, and service.

3.11    Dean Walter Diaz agreed with the College Committee, applauding her research and scholarship, stating

> "Dr. Agbese['s] scholarly output has been remarkable during the period under review, with seven peer-reviewed publications in four journal(s), one peer-reviewed chapter, two encyclopedia entries and one book, as well as one textbook. This is well above the departmental requirements for publication, which demands four pieces. […] In the area of Scholarship/Research she exceeds expectations as outlined by the approved departmental policies and CLA defaults."

He cited his agreement with all prior levels that Dr. Agbese exceeded expectations in teaching, research, and service. He too recommended Dr. Agbese for promotion to Full Professor.

3.12    The final step prior to Plaintiff's Agbese's promotion application reaching Provost Zayas was the University Committee. The University Committee voted 6-0 (with one abstention), to recommend her for promotion to Full Professor, and like all levels prior, rated her as "Exceeds Expectations" for teaching, research, and service.

3.13    Plaintiff Agbese was unanimously recommended for Full Professor at all levels; her Department Committee, her Department Chair, the College Committee, the Dean, and the University Committee. They all rated her as "Exceeds Expectations" in all categories of her application. They praised her global contributions to her field, her multiple teaching awards, publications, her prestigious fellowships, Principal Investigator ("PI") and Co-PI roles in grants,

and her public appearances (including appearances in global media outlets such as the BBC). But none of that mattered to Defendant UTRGV. UTRGV was only interested in ensuring it did not promote a black woman from Nigeria, with a Nigerian accent and who did not speak Spanish, to Full Professor.

3.14    By May 2024, Plaintiff Agbese's solid application for promotion finally made its way to Provost Zayas's desk. On May 8, 2024, disagreeing with all prior levels, Provost Zayas denied Dr. Agbese's application. He provided little concrete rationale, overwhelmingly generalizing his reasons for his denial of her promotion, stating "This recommendation is based on the low productivity by the candidate and an insufficiently focused program of scholarship."

3.15    On or about May 13, 2024, Dr. Agbese submitted a lengthy formal appeal to Provost Zayas, detailing her record and rationale as to why the Provost should reverse his decision. Provost Zayas replied on May 27, 2024, reaffirming his decision to deny her promotion to Full Professor, claiming there was "little evidence that the candidate is contributing to the university's aspiration to R1 classification" – a criterion outside of established criteria for promotion to Full Professor, and inconsistent with the University's current research status[2]. Further, nowhere in the University's Mission Statement, Vision statement, or Core Values statement is there any specific reference as to a goal of achieving R1 status.

3.16    The Provost further attempted to justify his departure from the prior levels and established criteria, claiming

> "While Associate Professor Agbese avers a 'robust record of scholarship,' I respectfully disagree that 9 publications in five years represents a hardy level of productivity for someone aspiring to the rank of professor at an emerging research university."

---

[2] UTRGV only recently achieved R2 status.

Provost Zayas could only make such statement by completely ignoring the established departmental criterion requiring a minimum of four publications in six years – a threshold Dr. Agbese vastly exceeded with her nine publications in five years.

3.17    The Provost also attempted to justify his denial of Dr. Agbese's application by claiming she had not actually served as a Co-PI/Key Personnel on a 2019 $174,000 U.S. Department of Education grant, as set forth in her dossier. Dr. Agbese responded to that assertion, explaining she did not intentionally misrepresent her involvement in the grant. She forwarded a May 28, 2024, letter to Provost Zayas from Dr. Dennis Hart, CEO of Optimus International Education Consulting, Inc., LLC, who served as the PI on the grant. Dr. Hart verified, "Associate Professor Agbese was a valued and important member of this core group [of 5 working group faculty on the grant], who were considered to be Co-PIs in the process." Nonetheless, Provost Zayas maintained his denial of Plaintiff Agbese's application.

3.18    Plaintiff Agbese emailed Provost Zayas on June 10, 2024, timely initiating her grievance process pursuant to UTRGV ADM 06-111(D.1) and requesting an informal meeting with him as part of that process. She cited ADM 06-504(D7), which states: "[a] grievable action or decision for which there is no other applicable procedure may be brought under ADM 06-111 Faculty Grievances," explaining she was grieving the Provost's denial of her promotion application on grounds that he based his decision "on criteria other than the departmental standards that were created to guide and evaluate [her] contributions to the university and profession." Provost Zayas responded by letter dated June 17, 2024, denying Dr. Agbese's grievance, and asserting he did not believe the issue was grievable under UTRGV policy. Dr. Agbese restated her position, and Provost Zayas wrote back on June 27, 2024, stating "Your request seeks

reconsideration of my evaluation and decision, which are final under the evaluation and promotion process. As such, you have exhausted your reconsideration requests."

3.19    On June 29, 2024, Dr. Agbese filed a grievance with the University's Office of Title IX and Equal Opportunity. She received a response from that office on July 2, 2024, to set up an initial meeting, which took place on July 11, 2024, in which Dr. Agbese alleged discrimination against her by Provost Zayas in denying her application for promotion. A second investigative meeting took place with the office on August 30, 2024, in which Dr. Agbese had a union representative present from the AAUP. Plaintiff Agbese did not hear from the University's Title IX and Equal Opportunity office again for five and a half months, until February 13, 2025, when the office informed her that she would have access to a report of its investigation within 30 days. That report never came. If it exists, Dr. Agbese has never received access to it.

3.20    Additionally, on July 2, 2024, Plaintiff Agbese attempted to appeal the denial of her promotion to President Bailey, through a formal grievance against Provost Zayas, for his denial of her promotion application and for his refusal to meet with her and permit her to grieve. President Bailey never responded to this formal grievance.

3.21    Provost Zayas' denial of Plaintiff Agbese's application for promotion to Full Professor, and his denial of her subsequent attempt to grieve that denial, were not based on any valid criteria. In reality, his stated rationale was mere pretext for his real motivation: Dr. Agbese's inability to speak Spanish, coupled with her Nigerian national origin and accent, black race and color, and her female sex. Provost Zayas claimed Dr. Agbese did not fit into the University's vision of becoming an R1 research university; in actuality, the vision he had in mind, with which she did not fit, was what he had described at the dinner a few months before. "[P]art of our vision, part of

our identity: to become an authentically bilingual, bicultural, and bi-literate institution . . . a B3 institution, as we fondly refer to it."

3.22    Defendant UTRGV's fixation on having faculty teach classes entirely in the Spanish language was not only discriminatory, but also illegal under Texas state law[3]. Provost Zayas' intent to reshape the faculty to reflect his B3 vision sidelined Plaintiff Agbese - a Black, Nigerian woman with a Nigerian accent who does not speak Spanish. Dr. Agbese's qualifications for Full Professor, recognized as exceeding expectations at all levels prior to the Provost, were disregarded because she did not fit into his mold. Through Provost Zayas' actions, supported by President Bailey, UTRGV intentionally marginalized Dr. Agbese, potentially to force her departure in favor of faculty aligned with its discriminatory vision.

3.23    Defendant UTRGV's decision to deny Plaintiff Agbese's promotion was not only based on her Nigerian national origin, ethnicity, race, and color, but additionally, and alternatively, was also based on her female sex.  On information and belief, most, if not all, faculty denied advancement in Plaintiff Agbese's College of Liberal Arts were women, indicating gender bias by Defendant UTRGV.

3.24    The University, through its administrators Provost Zayas and President Bailey, stripped Plaintiff Agbese of her deserved recognition, the associated $10,000 annual increase in salary, and future annual merit-based pay increases to that new salary; breached her contract; defied Texas state law; and violated Title VII of the Civil Rights Act of 1964, discriminating against her on the basis of her national origin, ethnicity, race, color, and sex. Dr. Agbese, as detailed in Section IV. Causes of Action, below, has exhausted her administrative remedies in

---

[3] Texas Education Code 51.917(b)(2), regarding Faculty Members; Use of English, requires governing boards of institutions of higher learning to "ensure that courses offered for credit are taught in the English language [...]"

filing a Title VII charge with the EEOC, and has received her Right to Sue notice. She timely brings this suit against Defendant UTRGV, seeking all remedies available to her under Title VII.

**Plaintiff Minhee Eom**

3.25    Like Plaintiff Agbese, Plaintiff Minhee Eom was hired by University of Texas Pan American in 2006, which transitioned into UTRGV in 2015. Plaintiff Eom, an Asian woman born and raised in Korea and who speaks with a Korean accent, was originally appointed as an Assistant Professor of English, later earning tenure and the title of Associate Professor of Writing and Language Studies in the College of Liberal Arts in 2012.

3.26    On September 8, 2023, Dr. Eom submitted her dossier for promotion to Full Professor. By the time Plaintiff Eom submitted her dossier, she had amassed numerous publications in respected peer-reviewed journals, taken prominent leadership roles on university committees, received multiple research grants, mentored graduate students, and received excellent teaching evaluations and post-tenure reviews. She also authored multiple courses, including a course in Korean Studies for the Foreign Language department, and created a minor in Asian Studies.

3.27    Just as with Dr. Agbese, over the next six months after submitting her dossier, Dr. Eom received glowing reviews at every step of the review process. Her Department Committee, her Department Chair, the College Committee, the Dean, and the University Committee all rated her overall application as "Exceeds Expectations," unanimously recommending she be promoted to Full Professor.

3.28    Then it was Provost Zayas' turn. As he had done with Plaintiff Agbese's application, Provost Zayas brushed aside all prior levels of review, denying Plaintiff Eom's application for promotion to Full Professor, while providing only vague generalizations devoid of

any specific critique or explanation as to the alleged deficiencies in her work. Instead, the Provost determined that her research, which exceeded minimum departmental criteria for promotion but which received minor critique from one of her four external reviewers, was inadequate. Provost Zayas ignored the established departmental criteria for research, ignored her undisputed successes in the areas of teaching and service, and thereby denied promotion to another non-Spanish-speaking applicant.

3.29    Plaintiff Eom provided a response to Provost Zayas on May 22, 2024. He replied on June 5, 2024, maintaining his decision to deny Dr. Eom's application. Dr. Eom appealed, asking the Provost to meet with her for an initial informal meeting. He responded, denying her right to grieve and refusing to change his denial of her application for promotion to Full Professor. She filed a formal grievance to President Bailey on July 11, 2024, over the Provost's improper use of criteria outside approved departmental standards, and on August 2, 2024, President Bailey both denied her request for the Provost's decision to be overturned and denied her right to further grieve the matter: "To the extent any decision is required under ADM 06-111 Faculty Grievances, your request for a faculty grievance committee is denied, your appeal of Dr. Zayas' decision is denied, and these decisions are final."

3.30    As detailed above, Defendant UTRGV, through Provost Zayas and President Bailey, envisioned transforming UTRGV into a B3 institution – unlawful under Texas law to the extent classes would be taught entirely in Spanish. The vision is also offensive to the principles underlying Title VII – privileging two cultures, languages, and literacies over the cultures, languages and literacies Plaintiffs brought to the school. There was no room in UTRGV's bicultural identity for Plaintiffs' cultural backgrounds, so Defendant has denied promotion to these

fully deserving faculty who simply do not speak Spanish, and who are not culturally Hispanic, in violation of state and federal law.

3.31    Plaintiff Eom, as a non-Spanish-speaking, non-Hispanic, Asian woman with a Korean accent, was denied promotion and denied the ability to ability to grieve such denial. These adverse employment actions were not the result of legitimate criteria for promotion, but based on expressed, direct discrimination, publicly and enthusiastically acknowledged by UTRGV's Provost. Professor Eom's Korean national origin and accent, Asian race and color, her inability to speak Spanish, and her female sex, were the real reasons for UTRGV's decisions against promoting her or entertaining any appeal or grievance from such failure to promote.

3.32    Provost Zayas' bias was not simply in favor of the right kind of "bilingual, bicultural, bi-literate" – Spanish and English, as opposed to Korean and English. He also engaged in less favorable, disparate treatment of Dr. Eom and other female faculty. Among the faculty considered for promotion in the College of Liberal Arts and across UTRGV, women faced a significantly higher denial rate than men, and Plaintiffs Agbese's and Eom's rejection align with that pattern. Dr. Eom's identity as a woman compounded the discrimination she faced due to her national origin, ethnicity, race, and color, leading to Provost Zayas' decision to deny her advancement.

3.33    Defendant UTRGV's denial of Plaintiff Eom's promotion to Full Professor was not a reflection of her qualifications but rather a deliberate act to exclude her based on her Korean national origin, her inability to speak Spanish, her Korean accent, and her female sex. Defendant's actions, through Provost Zayas and President Bailey, were part of a broader campaign to eliminate non-Spanish-speaking faculty, driven by an unlawful vision. Plaintiff Eom's over 19 years of distinguished service to UTRGV was overshadowed by the University's discriminatory agenda,

which violated Title VII's protections against discrimination based on national origin, race, sex, and ethnicity, and resulted in harm to Plaintiff Eom's professional status, reputation, and her current and future salary and merit-based pay. Seeking all relief available to her, Plaintiff Eom, having exhausted her administrative remedies in filing a Title VII charge with the EEOC and having received her Right to Sue notice, timely sues.

### Plaintiff Wan-Lin Chang

3.34    Plaintiff Wan-Lin Chang, like Plaintiffs Agbese and Eom, faced discriminatory adverse actions by Defendant UTRGV, through its Provost and President, on the basis of her national origin, ethnicity, race, color, and sex. Dr. Chang is a female, Asian Assistant Professor of Communication Studies at UTRGV, originally from Taiwan, and speaks with a Taiwanese accent. She was denied tenure and promotion to Associate Professor by Provost Zayas and President Bailey in similar fashion to the denials of promotion experienced by Plaintiffs Agbese and Eom. However, because Dr. Chang's denial involved rejection of her application for tenure, per UTRGV policy, effective May 31, 2025, she will altogether lose her employment at UTRGV.

3.35    Plaintiff Chang applied for tenure and promotion in Fall 2023. With her impressive dossier, she was unanimously recommended all the way up the review process, as Plaintiffs Agbese and Eom were (in Plaintiff Chang's case, for tenure and promotion to Associate Professor). Dr. Chang received overall ratings of "Exceeds Expectations" at all levels - until ultimately being denied tenure by Provost Zayas. In her case, too, Provost Zayas used his own criteria rather than departmental standards, and denied her any right to grieve or appeal his decision. President Bailey then flat-out ignored her formal grievance, leaving her termination imminent.

3.36    The denial of Dr. Chang's tenure and promotion application is in keeping with the treatment received by the other two Plaintiffs. Like Dr. Agbese and Dr. Eom, Dr. Chang does not

speak Spanish. Like them, she is not Hispanic. Like them, she is from a non-Spanish-speaking country and has a strong accent, reflective of her national origin. And like them, she is female.

3.37    Dr. Chang's female profile intersected with her national origin, ethnicity, race, and color, amplifying the discriminatory grounds for her tenure denial. Most denials of tenure and promotion across the university in 2024, on information and belief, were women, suggesting a pattern of gender discrimination by Defendant UTRGV, on top of its prejudice against non-Hispanic, non-Spanish-speaking faculty.

3.38    Defendant UTRGV's rejection of Plaintiff Chang's tenure application stemmed not from deficiencies in her qualifications, but from the intent, expressed by Provost Zayas and participated in by President Bailey, to exclude from advancement faculty who did not align with the unlawful vision of a Spanish-focused university. Dr. Chang's Taiwanese heritage, Asian race, non-Hispanic ethnicity, inability to speak Spanish, and gender, marked her as incompatible with Defendant's preferences, as it sought to hire and promote faculty who shared Provost Zayas' linguistic and ethnic background, or who at the very least shared his gender. Despite her submission of a dossier that met every departmental standard, Plaintiff Chang's career at the University was unjustly terminated, and for discriminatory reasons.

3.39    Plaintiff Chang here sues for UTRGV's discriminatory conduct against her, which violated Title VII's protections against discrimination based on national origin, race, ethnicity, color and sex. As set forth below, Dr. Chang has filed a Title VII charge with the EEOC and has received her Notice of Right to Sue, indicating she has exhausted her administrative remedies.

## IV.  <u>CAUSES OF ACTION</u>

4.1    **Alternative Pleadings**.  To the extent necessary, each of the claims set forth below is pleaded in the alternative, and all allegations contained in each count below are incorporated

15

into each other count by this reference. Further, to the extent necessary, all allegations set forth above in Section III. <u>Factual Background</u> (paragraphs 3.1 through 3.39) of this Complaint are hereby referenced and fully incorporated in each of the claims below by this specific reference, as though set forth in full.

### *Federal Claims under Title VII of the Civil Rights Act of 1964: Discrimination Based on National Origin, Ethnicity, Race, Color, and Sex*

4.2    Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on race, color, national origin, sex, and religion. *See* 42 U.S.C. § 2000e-2(a)(1), prohibiting discrimination based on those protected characteristics "with respect to [an employee's] compensation, terms, conditions, or privileges of employment."

4.3    **Dr. Aje-Ori Agbese**. Plaintiff Aje-Ori Agbese filed a Title VII charge against UTRGV with the EEOC on or about September 19, 2024, alleging Defendant UTRGV, through administrators Provost Zayas and President Bailey, discriminated against her on the basis of her Nigerian national origin and ethnicity (including her accent and inability to speak Spanish), her race and color (black), and her sex (female). She was assigned EEOC Charge Number 450-2024-12034. Defendant UTRGV, as Respondent, submitted its Position Statement to the EEOC on October 25, 2024. Plaintiff Agbese received her Notice of Right to Sue on or about February 18, 2025, granting her 90 days to sue on her Title VII claims. Plaintiff Agbese, having exhausted her administrative remedies, sues here within 90 days of receipt of that notice.

4.4    **Dr. Minhee Eom**. In October 2024, Plaintiff Eom signed and submitted her Title VII complaint against Defendant UTRGV with the EEOC, asserting discrimination on the basis of her Korean national origin and ethnicity (including her Korean accent and her status as a non-Spanish speaker), her Asian race and color, and her female sex. The EEOC issued Dr. Eom Charge Number 451-2025-00162. On or about November 14, 2024, Dr. Eom received notification from

the EEOC that it forwarded her request for a Notice of Right to Sue to the Department of Justice ("<u>DOJ</u>"). Dr. Eom received her Notice of Right to Sue on or about April 22, 2025, from the DOJ, granting her 90 days to file suit; having exhausted all her administrative remedies, she now timely sues.

4.5    **Dr. Wan-Lin Chang**. Plaintiff Chang signed and submitted her Title VII charge against UTRGV with the EEOC on or about September 27, 2024, for discrimination on the basis of national origin and ethnicity (from Taiwan), race and color (Asian), and sex (female). Her EEOC Charge Number is 451-2025-00160. Dr. Chang's request for a Notice of Right to Sue was forwarded to the DOJ by the EEOC, and she received her Right to Sue notice from the DOJ on or about April 1, 2025. Having exhausted her administrative remedies, Dr. Chang timely brings this lawsuit within 90 days of receipt of that notice.

**Count 1: Discrimination on the Basis of National Origin, Ethnicity, Race, and Color**

4.6    Incorporating all allegations set forth in Section III of this Complaint, Defendant UTRGV has, through its administrators, discriminated against Plaintiffs Agbese, Eom, and Chang in the terms, conditions, and privileges of their employment. Defendant UTRGV violated Plaintiffs' civil rights under Title VII in denying their applications for tenure (in the case of Plaintiff Chang), promotions, and appeals on the basis of their non-Hispanic and non-Spanish-speaking national origins and ethnicities, coupled with their races and colors.

4.7    Provost Zayas claimed Plaintiffs' denials were the result of their supposed deficiency in their research activities. But this was nothing more than pretext for discrimination, as detailed herein.

4.8    Defendant UTRGV, through President Bailey, a white male, supported Provost Zayas - a Spanish-speaking, Hispanic male from Puerto Rico - in his discriminatory denials of

Plaintiffs' tenure and promotion applications and his subsequent mistreatment their appeals over those denials.

4.9     Unlike Provost Zayas, none of the Plaintiffs speak Spanish, none are Hispanic, and all have strong accents reflecting their respective, non-Hispanic national origins and ethnicities. Defendant UTRGV, in violation of Title VII, endeavored to force out Plaintiffs, as non-Spanish-speaking faculty, to advance Provost Zayas' illegal vision of a bilingual university with classes taught entirely in Spanish.

4.10     Defendant denied Plaintiff Agbese's promotion to Full Professor based on one or more of her protected classes. She did not fit with his unlawful plan to give preference to Spanish-speakers and permit Spanish-only instruction. Despite her qualifications and unanimous endorsements from her Department, College, and University Committees, as well as her Department Chair and Dean, Provost Zayas used pretextual criteria to discriminate against her. This action, treating her less favorably based on protected traits, driven by protected traits, to enforce an illegal bilingual agenda, violates Title VII.

4.11     Similarly, Defendant UTRGV rejected Plaintiff Eom's promotion to Full Professor was based on one or more of her protected classes, and was discriminatory. She was denied promotion on account of her non-Spanish-speaking status, her Korean national origin, her race and color, none of which aligned with UTRGV's "identity" as a B3 institution. Dr. Eom's qualifications, exceeding everyone's expectations, except for Provost Zayas', were more than sufficient to support promotion to full professor. Yet they were disregarded. Provost Zayas, who used unauthorized criteria as pretext for denying her application as well as denying her right to grieve, did so in violation of her civil rights under Title VII.

4.12    Defendant's denial of Plaintiff Chang's application for tenure and promotion to Associate Professor was based on one or more of her protected classes -- her non-Spanish-speaking status, her Taiwanese national origin, ethnicity, and accent, her race, and her color. Despite universal endorsements confirming Dr. Chang's qualifications, Provost Zayas, backed by President Bailey, saw fit to deny her application for tenure and promotion, resulting in her termination, effective May 31, 2025. The Provost's subsequent denial of her appeal rights, backed by the President, was similarly motivated by discriminatory animus, in violation of Title VII.

4.13    Plaintiff Agbese and Plaintiff Eom each suffered damages, including a $10,000 annual loss in salary going forward, and a diminution of future merit-based increases, as a result of such lower base salary. They also suffer the nullification of over a decade of publications now rendered valueless toward future applications for Full Professorship, and harm to their professional reputations. Plaintiff Chang's damages including her imminent job loss, loss of future income, diminished job prospects from the stigma of tenure denial, and harm to her professional reputation, possibly permanent.

4.14    Plaintiffs Agbese and Eom seek injunctive relief requiring UTRGV to grant them each promotion to Full Professor, along with the associated $10,000 annual salary increase; Plaintiff Chang seeks injunctive relief requiring UTRGV to reinstate her, granting her tenure, promote her to Associate Professor, and award her the associated $10,000 increase in annual salary. All Plaintiffs also seek prospective injunctive relief against UTRGV to prevent such discriminatory conduct by Defendant in the future, and request relief for their compensatory and punitive damages, front pay for reputational harm, attorneys fees, and all other equitable relief as permitted under Title VII.

**Count 2: Discrimination on the Basis of Sex**

4.15    Incorporating all preceding paragraphs of this Complaint, additionally, and alternatively, Defendant UTRGV discriminated against Plaintiffs Agbese, Eom, and Chang on the basis of their female sex in denying Plaintiffs Agbese and Eom their applications for promotion to Full Professor and appeals of those denials, and denying Plaintiff Chang tenure and promotion to Associate Professor and her right to grieve the denial.

4.16    On information and belief, during the 2023-2024 academic year, Provost Zayas, a male, denied at least 18 applications for tenure and promotion across the University; most of the applications he denied were from women, including Plaintiffs Agbese, Eom, and Chang. Defendant's discriminatory conduct against female faculty, including Plaintiffs, violated Title VII's protection against discrimination on the basis of sex.

4.17    As set forth above and fully incorporated herein, Plaintiffs have been damaged on account of Defendant UTRGVs prohibited conduct under Title VII of the Civil Rights Act of 1964, including its discrimination against them on the basis of their female sex. Plaintiffs seek injunctive relief in the form of promotion to Full Professor for Plaintiffs Agbese and Eom, and reinstatement, tenure, and promotion to Associate Professor for Plaintiff Chang. All Plaintiffs seek the normal annual salary increases commensurate with those promotions, compensatory and punitive damages, future pay for reputational harm, attorneys' fees, and all other equitable relief under Title VII.

## V.  <u>REQUESTED RELIEF</u>

5.1    As the direct and/or proximate result of Defendant UTRGV's actions complained of herein, Plaintiffs have been damaged and seek recovery of the full measure of relief and damages against Defendant to which they are entitled, including but not limited to actual and/or

economic damages, back pay, front pay, damages for mental anguish and emotional distress, nominal damages, if applicable, equitable relief, and compensatory damages.

5.2    Defendant UTRGV, through its administrators, discriminated and continue to discriminate against Plaintiffs by refusing tenure and reinstatement to Plaintiff Chang, and refusing to correctively grant promotion to Full Professor and the associated salary increase to Plaintiffs Agbese and Eom. Therefore, Plaintiffs seek injunctive relief against Defendant UTRGV for tenure and reinstatement for Dr. Chang, and for promotion to Full Professor (including the associated increase in annual salary) for Drs. Agbese and Eom. Further, Plaintiffs respectfully request that the Court grant prospective injunctive relief against Defendant UTRGV as it deems just and proper to eliminate the effects of the University's discriminatory practices and prevent their recurrence.

## VI.  FEES, COSTS, AND INTEREST

6.1    Plaintiffs have retained the law firm of Hill Gilstrap, P.C. to represent them in connection with this matter, and have each agreed to pay the law firm its reasonable and necessary attorneys' fees and costs in connection with such representation. Without waiving and/or limiting any other relief requested, Plaintiffs seek to recover their reasonable and necessary attorneys' fees and costs incurred and to be incurred in bringing this suit and in all appeals of this suit, as permitted by law or in equity, specifically including 42 U.S.C. § 2000e-5(k).

6.2    Plaintiffs are also entitled to and seek to recover costs of court, expert witness fees, and pre-judgment and post-judgment interest at the maximum rate permitted by law.

## VII.  CONDITIONS PRECEDENT

7.1    All conditions precedent to the Plaintiffs' recovery on the claims alleged herein have been performed or have occurred.

## VIII.  DEMAND FOR JURY TRIAL

8.1     Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs request a

jury trial and have tendered, or will tender, the requisite fee.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that upon final

hearing, Plaintiffs recover judgment against Defendants and be awarded:

(a)     against UTRGV, for violation of Title VII, any and all amounts recoverable and/or recognizable as damages under law and/or in equity, resulting and/or occasioned by the wrongful acts and/or conduct of Defendant UTRGV (as set forth above more specifically), including both actual and nominal damages;

(b)     prospective injunctive relief against UTRGV (as set forth above more specifically);

(c)     Plaintiffs' litigation expenses and costs, including but not limited to their attorneys' fees and costs and any applicable expert fees, against Defendant UTRGV, as may be permitted by applicable statutes and rules;

(d)     costs of court, pre-judgment and post-judgment interest, at the maximum rate as allowed by law; and

(d)     such other and further relief, both general and special, at law or in equity, to which Plaintiffs may be justly entitled.

Respectfully submitted,
*/s/ Frank Hill*
FRANK HILL
Texas Bar No. 09632000
fhill@hillgilstrap.com
STEFANIE M. KLEIN
Texas Bar No. 11565650
sklein@hillgilstrap.com
HILL GILSTRAP, P.C.
1400 West Abram Street
Arlington, Texas 76013

**COUNSEL FOR PLAINTIFFS
AJE-ORI AGBESE, MINHEE EOM,
AND WAN-LIN CHANG**